S. S. Curtis, appellee, v. A. J. Perry et al., appel-
LANTS.

[Filed November 25, 1891.]

1. **Burden of Proof**: When Payment is Pleaded as defense
   the burden is upon the party asserting such facts to establish it
   by a preponderance of the evidence.

2. **Review.** *Held*, That the findings and judgment are supported
   by the evidence.

Appeal from the district court for Douglas county.
Heard below before Wakeley, J.

*D. Van Etten*, for appellants.

*Charles W. Haller, contra.*

Norval, J.

This suit was brought by appellee to foreclose a mort-
gage on lot 1, block 6, of Belvidere addition to Omaha,
given by the defendant Alfred John Perry to secure his
three promissory notes of $100 each bearing date Decem-
ber 24, 1885, due in one, two, and three years respectively,
and drawing eight per cent interest.   Subsequently Perry
and wife, who are made defendants, conveyed the lot to
the defendant Julia Flannagan, the present owner.   The
defendant John Flannagan is the husband of Julia.   The
Perrys failed to answer and a default was entered against
them.   The Flannagans pleaded payment and set up in
the answer a claim for damages on account of the failure
of the appellee to release the mortgage of record.   The re-
ply was a general denial.   The court found that there was
due the plaintiff $353.10, and a decree of foreclosure was
entered.   The Flannagans appeal.

It is uncontradicted that the plaintiff, through one J. B.

Parrotte, sold the lot in December, 1885, to Perry, then a soldier stationed at Fort Omaha, for the stipulated sum of $400. Perry paid $100 in cash, and gave the notes and mortgage in controversy in security for the remainder of the purchase price, and received a deed for the lot. At the time of the purchase there was a verbal agreement between Perry and Parrotte to the effect that if the former should be removed from Fort Omaha, the latter was to take the lot off Perry's hands, or procure a purchaser for him, so he would get his $100 back with interest. In the spring of 1886 Perry notified Parrotte that he was going to be removed from Fort Omaha, and on April 16th of the same year Parrotte sold the lot to the Flannagans for $500, or $200 above the mortgage in controversy, the payment of which they assumed in the deed. Of the $200 there was paid $100 in cash and a second mortgage was given to J. B. Parrotte by Mrs. Flannagan to secure her note for $100, which mortgage was not recorded. Upon one of the notes in controversy there is a credit of $35 under date of June 24, 1886, for which payment a receipt was given to John Flannagan, which was produced and introduced in evidence upon the trial in the district court. It is also undisputed that on April 30, 1886, the plaintiff, through his agent, sold lot 4 in said block 6 to the appellant, Julia Flannagan for $400, the terms being $100 cash and her note for $300, due in two years at eight per cent interest, secured by mortgage on the lot.

It is the theory of the appellants, and there is in the record evidence tending to support it, that the notes and mortgage involved in this suit were paid off by the appellants on the 30th day of April, 1886, by John Flannagan giving his check on an Omaha bank for $300, bearing that date, payable to the order of C. E. Mayne, a real estate dealer of the city, who made collections for plaintiff, and with whom the plaintiff officed. That such a check was given by Flannagan, endorsed by Mayne, and paid by the

bank, is indisputable.    John Flannagan testified that he gave this check in payment of the mortgage executed by Perry.    There is also other testimony introduced on behalf of appellants, tending to support this view.

The plaintiff contends that the proceeds of the check were not applied on the mortgage in controversy, and it was not the intention of the appellants that they should be so applied, but that Mr. Flannagan went into Mr. Mayne's office, left the $300 check, and, under his directions, it was applied as follows : $100 as the first cash payment on lot 4; $100 to take up $100 Parrotte note and mortgage, which had been left with Mr. Mayne for collection, and $100 to be credited on the $300 note and mortgage of Julia Flannagan, covering said lot 4.

The appellee's theory of the transaction is not without testimony to sustain it.    David Jameson, who was the cashier and bookkeeper of C. E. Mayne, from September 1885 to October, 1886, and had charge of his collections, was called as a witness by the appellee, and on being interrogated in regard to the check given by Flannagan to Mayne, answered as follows :    "This check of $300 was offered by Mr. Flannagan in payment of the first payment of $100 on lot 4, in block 6, in Belvidere, and in payment of $100 of a note given to J. B. Parrotte, dated April 17, 1886, due in two years after date, signed by Julia Flannagan, and witnessed by myself, and also in payment of an endorsement of $100, entered under date of April 30, 1886, upon a note of $300, given by Julia Flannagan to Samuel S. Curtis, dated April 30, 1886.    The payment, although made May 3, was indorsed on the note of $300 under date of April 30—same date as the note—so that interest would be cancelled on that $100 from the date of the note."    On cross-examination the witness further testified that the check came into his hands on May 3, and was so credited at the request of Mr. Flannagan ; that while the sale of lot 4 was made on April 30, and the notes and mortgages

were executed that day, the transaction was not closed up until May 3.

The testimony of Mr. Jameson is corroborated by other testimony appearing in the record. The $100 note given by Mr. Flannagan to Parrot as part consideration for lot 1, which was introduced in evidence by the appellants, has a receipt written across its face for $100, dated May 3, 1886, and signed by Jameson. The $300 note given by Mrs. Flannagan as part payment for lot 4, has a credit thereon of $100, under date of April 30, 1886. Appellants do not claim to have made any payment upon this note, but according to their testimony, they went into Mr. Maynes office on June 22, 1887, to lift the note, when they gave him $376, and he returned to them $76, stating at the time that they had paid that amount too much. We find, however, a receipt on the face of the note for $219.50 bearing date June 22, 1887, which sum, after deducting the $100 indorsement, was the balance then due on the note. Again, the $300 check was insufficient to discharge the Perry notes and mortgage involved in this suit. They had been on interest over four months when the check was given, and at that time nothing had been paid. Counsel for appellants suggest that probably the balance was paid in cash, or perhaps the interest was deducted because paid so soon. We answer, there is nothing in the testimony to sustain such a theory. The payment of $35 on one of these notes by John Flannagan on June 24, 1886, nearly two months after the $300 check referred to was given, is inconsistent with the claim of appellants that the Perry notes were taken up by the check. Should it be suggested that appellants supposed the $35 payment was to be credited on the $300 note secured by mortgage on lot 4, we reply we find no such explaination in the testimony, besides such position is equally incredible. Had appellants supposed that the $35 was credited on the $300 note we cannot believe that they would have tendered $376 in payment of

the note, as they contend, which at the time had been on interest less than fourteen months with a credit of $35. There would have been less than $300 due on the note at the time referred to.    John Flannagan in. his testimony says he was astonished when he got back the $76. .

The appellants admitted the execution of the notes and mortgage, and pleaded payment.    The burden of proof, therefore, was upon them to make out their defense by a preponderance of the evidence. (*Magenau v. Bell,* 14 Neb., 7; *Tootle v. Maben,* 21 Id., 617.)    Had the district court sustained their defense it would not have been entirely unsupported by the testimony.    The court, however, found against the plea of payment, and from a careful consideration of the testimony we are not prepared to say that the finding is wrong.

The conclusion reached disposes of the appellants' claim for damages for failure of appellee to release the mortgage.

Objection is made in appellants' brief that there was no service of summons upon the Perrys.    The amended transcript shows that on October 10, 1888, a summons was issued for the Perrys, directed to the sheriff of Douglas county, who duly appointed Martin Gilfoil to serve the same, and the person thus appointed on October 19, 1888, made return upon oath that it was personally served upon the defendants in Lincoln county in the then territory of Washington.    The service was authorized by the code. (Section 81; *Cheney v. Harding,* 21 Neb., 68.)

Had there been no service of process upon the Perrys the appellants would have no ground for complaint, for the reason that the Perrys were not absolutely necessary parties to the suit.    The appellants are the owners of the equity of redemption, having acquired all the title of the mortgagor, and the Flannagans were the only persons necessary to have been made defendants.    The judgment is

AFFIRMED.

THE other judges concur.