WILBERT MORRIS, ADMINISTRATOR, APPELLEE, V. EQUITABLE
LIFE ASSURANCE SOCIETY, APPELLANT.

FILED DECEMBER 8, 1922.   No. 22172.

1. **Evidence.** Uncontradicted evidence should ordinarily be taken
as true, and where the evidence tends to establish a fact which
it is within the power and to the interest of the opposing party
to disprove, if false, his failure to disprove it strengthens the
probative force of the evidence tending to prove it.

2. **Marriage:** BURDEN OF PROOF. The burden of proof of marriage
rests upon the party who pleads it.

3. **Evidence:** NONEXISTENCE OF PERSON. A witness may testify as
to the nonexistence of a person; the extent of the search affects
the weight, and not the competency, of the evidence.

4. **Insurance:** IDENTITY OF BENEFICIARY: BURDEN OF PROOF. Where
the beneficiary in an insurance policy is designated as "his wife,
Bessie Morris," and some person who is not "his wife, Bessie
Morris," claims the fund, the burden of proof is upon such
claimant to establish the fact that she is the person referred to
in the policy as "his wife, Bessie Morris."

5. **Evidence** examined, and *held* sufficient to sustain the judgment.

APPEAL from the district court for Valley county:
BAYARD H. PAINE, JUDGE. *Affirmed.*

*Gurley, Fitch & West* and *Munn & Norman,* for appellant.

*Prince & Prince* and *Davis & Davis, contra.*

Heard before MORRISSEY, C. J., ALDRICH, DAY and
FLANSBURG, JJ., REDICK, District Judge.

ALDRICH, J.

This is an action by Wilbert Morris, administrator of
the estate of Joseph Morris, deceased, against the Equita-
ble Life Assurance Society of the United States, upon a
life insurance contract.

The facts are substantially as follows: The defend-
ant insurance company entered into an insurance con-
tract with the Union Pacific Railroad Company, insuring

its employees.  Under this insurance contract, a certifi-
cate was issued to Joseph Morris, which certificate was
made payable to "his wife, Bessie Morris."  Upon the
death of the insured, Joseph Morris, the plaintiff, who
was administrator of his estate, brought suit on the
policy, alleging briefly that Joseph Morris was not mar-
ried, had no wife, Bessie Morris, and alleging further
that the defendant had paid the plaintiff the sum of
$310.  The defendant answered, alleging briefly payment
of the balance to Bessie Morris, and alleging that the
payment to the plaintiff was at the request of Bessie
Morris.  The reply, in general, reiterated the denial of
the existence of Bessie Morris, either as the wife of
Joseph Morris, or otherwise, denied the payment to her,
and denied that the payment made to the plaintiff was
made at the request of Bessie Morris.

Upon the trial plaintiff introduced evidence as to the
following points:  That Joseph Morris was not married
from 1915 until his death; that there was no such per-
son as Bessie Morris; that the defendant had paid the
plaintiff $310.  The plaintiff rested, and the defendant
then rested without introducing any evidence.  The case
was tried to the court without a jury, and resulted in a
finding and judgment in favor of the plaintiff.  Defend-
ant appeals.

The first proposition of law that is presented to us
for consideration is that uncontradicted evidence should
be taken as true, citing 23 C. J. 37, sec. 1779. It is a rule
well established that uncontradicted evidence should ordi-
narily be taken as true, and that where the evidence tends
to establish a fact which it is within the power and to
the interest of the opposing party to disprove if false,
his failure to attempt to disprove it strengthens the pro-
bative force of the evidence tending to prove it.  The
probabilities and nature of the situation add greatly to
the fact that Bessie Morris was a fictitious person. Every
circumstance and every fact and all of the *res gestæ* of
the case go a long way to establish this proposition.  If

she was in fact not a fictitious person, why was it not generally known in the neighborhood where she lived that she was living with him as his wife?

The next proposition is that, if she was living with him, why did she keep it a secret and withhold the information from her friends? Is it reasonable to believe that she would sit idly by and allow herself to be barred forever from recovering $2,500, when by letting herself be known and telling the alleged truth she could easily have sustained her position? Such a circumstance is unnatural, entirely suspicious, and makes it unworthy of belief, and makes it wholly reasonable to say under the circumstances of the case that she was a fictitious person and of no existence so far as this case is concerned. Further, as supporting this proposition, see *Gibbons v. Chicago, B. & Q. R. Co.*, 98 Neb. 696.

Another rule which is self-evident in this case is that the burden of proof of marriage rests upon the person who pleads it. 26 Cyc. 871, and cases therein cited. It was never claimed by any one at any time during the lifetime of the deceased, nor did he have the reputation of living with any woman as his second wife. Anyhow, under these circumstances, the burden of proving a marriage rests upon the party asserting it. 26 Cyc. 871. All persons acquainted with the deceased during his lifetime were ignorant of the fact as to whether he lived with a woman whom he called his second wife. If he did sustain marital relations before his death, naturally, would he not have the reputation of it? His son, the administrator, Wilbert Morris, had no information or knowledge of the father sustaining marriage relations with any woman since the death of his former wife, and there is no evidence whatever of any woman who designated herself as a beneficiary of her deceased husband after his death, when but to have done so would have established her right to the sum of $2,500 in this case. Nor does the defendant make any attempt, either directly or indirectly, to show that Joseph Morris, deceased, left a

widow on February 9, 1920. Defendant remained silent when it was its duty to have spoken.

It was said in *People v. Sharp,* 19 N. W. 168 (53 Mich. 523), and it is in point here: "Evidence of a sheriff's inability to find or hear of any such person as witnessed an instrument is admissible to show that the same is fictitious; and the extent of his search and his opportunities go to the weight, but not to the competency, of his evidence."

That is the situation here. This defendant had every opportunity to know and ought to have known and does know whether such a person existed. This defendant, by remaining silent, went to sleep on its rights and is forever barred from being heard on this subject. One thing is true, uncontradicted evidence which bears the semblance of truth is entitled to be believed, and courts, as a rule, under these circumstances take this kind of evidence for the truth, as the court undoubtedly did in the instant case.

Wilbert Morris, the administrator, testified as to whether his father had married Bessie Morris. He inquired of the county clerk as to whether or not a marriage license had been issued from his office to his father and Bessie Morris, and whether or not this marriage license was issued to his father between January 1, 1917, and the date of his death. He also testified as to the nonexistence of such a person as Bessie Morris. It appears of record as follows, to wit: "Q. State whether or not you found a woman by the name of Bessie Morris? * * * A. No. Q. Do you know any person by the name of Bessie Morris? A. No, sir. Q. So far as you know, does such a person exist as Bessie Morris? A. No, sir." While it may be that this evidence is weak and unsatisfactory and not as strong as it might have been, consistent with the truth, yet it is strong enough, not only to put the burden of proof upon the defendant, but impels it to take this testimony as true or forever remain silent. In other words, it undoubtedly at least raises a

strong presumption as aforesaid that. Bessie Morris only had an imaginary existence and she was treated as such by the decedent.

It is generally conceded to be the law that a witness may testify as to the nonexistence of a person; the extent of the search affects the weight, and not the competency, of the evidence. *State v. Hahn,* 38 La. Ann. 169; *People v. Eppinger,* 105 Cal. 36.

If it appears in the record that the beneficiary in an insurance policy is designated as "his" wife, Bessie Morris," and some person who is not "his wife, Bessie Morris," claims the fund, the burden of proof is upon such claimant to establish the fact that she is the person referred to in the policy as "his wife, Bessie Morris."

It appears of record that defendant made a part payment of the insurance and that it paid $310 on the same. We understand this to be admitted by the appellee and there is no controversy about this fact. After deducting this payment from the face of the policy, there is found the difference between this item of $310 and the face of the policy, or $2,190.

As a general rule. of. law, it is true that part payment of a debt raises a presumption that there is a promise to pay the balance. In support of this, see 30 Cyc. 1220, and cases therein cited.

The burden of proving payment is upon the party pleading it. 30 Cyc. 1264; *Davis v. Hall,* 70 Neb. 678; *Mullally v. Dingman,* 62 Neb. 702; *Curtis v. Perry,* 33 Neb. 519; *German v. Boslough,* 28 Neb. 33.

As a matter of law, it is presumed that the name of a beneficiary is the legal one. It is equally true that the name mentioned in the policy is often fictitious and imaginary, and testimony of. relatives and friends is competent and entitled to great weight. While the deceased was running on the railroad between Ord and Grand Island almost daily the year around, friends and relatives would be in position to give testimony as to whether

or not he ever knew or was acquainted with one Bessie Morris.

Furthermore, there is no evidence as to what was the intention of the deceased as to conveying his property to Bessie Morris, nor is there any evidence whatever that Bessie Morris ever saw this policy or knew of its existence, and, furthermore, whatever evidence there is on the subject goes wholly to prove that Bessie Morris was a fictitious person. Would it be possible to have her living in the community of Ord, a small village, and be unable to find any person who knew her or had any acquaintance with her? Is there any evidence, either directly or indirectly, that Bessie Morris was to be the beneficiary of this policy? Is it not true as a matter of fact that it is the duty of the court to give an intention effect? Yet, in this case, is it not true that the alleged second wife of the decedent is a mere fiction, spurious entirely and fraudulent? This evidence at least raises the presumption unanswerable that Bessie Morris was purely fictitious, never had an entity, and therefore never knew or had any relation with the deceased. Therefore, it seems logical, and inevitable, and we are forced to the conclusion that the children of the deceased, Joseph Morris, and other relatives, as a matter of law, can be the only beneficiaries of this insurance policy.

As a matter provided for by statute, the attorney for plaintiff is entitled to reasonable pay for services in this court. We therefore consider that the amount allowed should be $100, and the same is allowed.

After considering the entire record of this case, and after going over the facts, and while the evidence is weak and unsatisfactory, yet it is also true enough to warrant the court, as a matter of law, in affirming this case.

AFFIRMED.