LIBORIA TERESI, APPELLANT, V. ROSE FILLEY ET AL., APPELLEES.

21 N. W. 2d 699

FILED FEBRUARY 15, 1946. No. 32018.

*Joseph O. Burger,* for appellant.

*Beckman & Beckman,* for appellees.

Heard before SIMMONS, C. J.. PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This, so far as the parties here are concerned, is a foreclosure action against the mortgagors and a judgment creditor of the mortgagors. The trial court held the mortgage to be without consideration and void and enforced the judgment. The plaintiff appeals. We affirm the judgment of the trial court.

The parties defendant originally were Edith Beckman, who was dismissed from the case on plaintiff's motion at the time of trial; Samuel Mancuso and Mary Mancuso, mortgagors; Rose Filley, a judgment creditor of the defendant, Samuel Mancuso; and Conservative Savings and Loan Association. This last named defendant does not appear in the case here and, so far as the record shows, did not appear in the case in the trial court.

The petition herein was filed June 22, 1939. The plaintiff sought the foreclosure of a real-estate mortgage bearing date of September 22, 1933, which was recorded April 17, 1939. The mortgage conveyed certain real estate to which for convenience we shall refer herein as Lot 36 and Lot 9. Plaintiff alleged that the mortgage was given to secure a note dated April 22, 1933, for $2,500 payable five years after date; that no interest had been paid on the note since September 22, 1938; that the defendants Mancuso on September 22, 1938, executed and delivered to her a quitclaim deed conveying this property to her; that said deed was recorded on September 24, 1938; that on or about January 22, 1938, the defendant, Rose Filley, in the district court

for Douglas County recovered a judgment for over $5,000 against the defendant, Samuel Mancuso, and others; that on or about September 27, 1938, defendant, Conservative Savings and Loan Association, recovered a judgment for over $3,000 against Samuel Mancuso in the district court for Douglas County; and that on June 21, 1939, under sheriff's sale to enforce the Rose Filley judgment, Lot 36 was sold to Edith Beckman. Edith Beckman was defendant Filley's attorney.

Plaintiff prayed for a decree that the liens of the defendants be declared to be inferior to that of the plaintiff; that the mortgage be foreclosed; that a receiver be appointed to collect the rents; and for equitable relief.

Defendant Filley answered on July 24, 1939, denying generally and alleging that on January 18, 1938, she recovered a judgment against the defendant, Samuel Mancuso, in the amount of $5,207.74 in the district court for Douglas County; that at that time defendant Mancuso held the legal title to said premises; that her judgment was a first lien upon the property of defendant Mancuso; and that the mortgage was junior and inferior to her judgment and a cloud on her title. She alleged that the execution of the "purported quit-claim" deed was an attempt to convey the two lots to the plaintiff; and that the quitclaim deed was executed for the sole purpose of placing the property beyond the reach of herself as a judgment creditor. She prayed that her judgment be decreed to be a first lien upon the property; that the quitclaim deed be canceled and annulled; that the mortgage be canceled and annulled, or in the alternative, be declared inferior to her judgment lien; that the title to Lot 36 be quieted in her free from all liens and claims of the plaintiff or other defendants; and for equitable relief. No other pleadings appear in the transcript.

Plaintiff did not appear at the trial. To sustain the allegations of her petition, other than as to documentary evidence, she offered the evidence of defendant Samuel Mancuso. Defendants' case, other than documentary, rests upon

Mancuso's examination and cross-examination. Whether or not plaintiff is to prevail depends upon the weight and the credibility of Mancuso's testimony. Here is the story he told, together with chronological reference to written instruments and other information appearing in the record.

Plaintiff and Mancuso were old acquaintances. In 1932, he, as plaintiff's agent, sold a piece of property for her from which she received some $3,000. Plaintiff wanted to invest the money; Mancuso "kept it." He gave no evidence of indebtedness at the time. In 1933, Mancuso and wife gave plaintiff the note and mortgage involved in this action to secure plaintiff's funds.

The note was for $2,500, dated April 22, 1933, and in the body contained only this language: "Five year after date we promise to pay to the order of Liboria Teresi Twenty five Hundred and 00/100 Dollars Payable at Omaha Value received." The mortgage bore date of September 22, 1933, conveyed the property involved here and recited that the Mancusos had executed and delivered to plaintiff one promissory note (and in typing) "of even date, for the sun (sic) of Two-Thousand Five Hundred (2500.00) Dollars, paybele (sic) on or before five years from date, bearing interest at the rate of Six per cent per annum payble (sic) annually." He said the date of the note, April 22, 1933, was correct and when asked how it happened that the mortgage was dated September 22, 1933, he didn't know—"maybe it was a mistake; I was supposed to give both at the same time." When asked when the mortgage was executed he answered: "Sometime in 1933." "Well, September—I don't remember the date" and he didn't remember the mortgage was given later than the note.

Mancuso testified that he paid interest on the note "To 1938" and owed interest from then to the time of trial. There are no interest payments endorsed on the note. Plaintiff in her petition fixed the interest as paid to September 22, 1938, which is also the date of the quitclaim deed to which we shall refer presently.

On January 18, 1938, defendant Filley secured a judg-

ment against Mancuso in the district court for Douglas County for $5,207.74. Reference is made in the record to an appeal of this case to this court. See Filley v. Mancuso, 135 Neb. 403, 281 N. W. 850, opinion filed October 28, 1938.

On September 22, 1938, the Mancusos by quitclaim deed conveyed the property involved here to plaintiff for a re-cited consideration of two dollars. This deed was recorded September 24, 1938. Mancuso testified that this deed " * * * was for additional security, whatever it was." When asked what consideration he got from the plaintiff for the deed, he said, "Well, I give a deed because not to put her to any expense for foreclosure, and I give it for additional security" and still later he said he did not want to put plaintiff "to any expense for foreclosure."

On December 22, 1938, execution was issued on the Filley judgment, the return showing that levy was made on Lot 36 on February 2, 1939, and returned February 10, 1939, and reciting insufficient time to advertise and sell within the life of the writ.

On April 17, 1939, the mortgage hereinbefore referred to was filed for record. Mancuso said he told the plaintiff to record it because he wanted to protect her. On July 28, 1939, the sheriff of Douglas County conveyed Lot 36 to de-fendant Filley by sheriff's deed, which recited an execution issued May 8, 1939, and sale had on June 20, 1939.

On June 22, 1939, plaintiff's petition was filed. It was verified by an attorney who recited that he had in his pos-session the instruments on which it was founded. The praecipe requested summons for all defendants "except the Mancusos."

The attorney who brought this foreclosure action was Mancuso's attorney in the foreclosure action resulting in the Filley judgment. Mancuso said he took plaintiff to his attorney because she wanted "legal counsel." The attorney died in 1940. Mancuso testified that the note and mortgage were delivered to the plaintiff and that he secured posses-sion of the note from plaintiff and turned it to the attorney while the latter was living. He testified that he secured the

mortgage from the executor of the attorney's estate immediately after he died.

Sometime in 1939, one Thomas J. O'Neil was appointed receiver in the case. He officed with Mancuso. Thomas J. O'Neil is shown as the notary who took the attorney's acknowledgment on plaintiff's petition. Mr. O'Neil, as receiver, collected the rents up to the date of his death in July 1940. No report of his receivership was made to the court at the time of his death, nor was the court advised of his death. Thereafter until and including December 1944, Mancuso collected the rents, repaired the property, kept it insured and otherwise treated it as his own. The testimony is that the successor receiver was appointed in November or December 1944. Mancuso placed the rents in his own account and paid the bills. He did not secure permission of the court to take the place of the receiver. He made no accounting to plaintiff for the rents collected and she never asked him for the money. He paid her no interest after the deed was given and she never asked for it.

The transcript shows that this action was placed upon the dismissal docket in 1941 in the district court for Douglas County. Just when it was put back upon the trial docket is not disclosed. It appears that it finally came to trial February 15, 1945; and that defendant Filley's counsel was the moving cause in finally getting the action to trial. The record shows that Mancuso appeared personally and was granted a continuance to secure counsel, and then appeared at the trial without counsel. An attorney appeared and represented plaintiff at the trial. He had been Mancuso's attorney since the death of the attorney who started this action.

When it was called to the attention of the court that Mancuso had been collecting the rents, he was ordered to report to the court. He failed to do so. A continuance of the trial was necessary in order to secure the report. It consisted of sheets of paper showing a summary of rents received and expenditures made. Three items are of interest. Mancuso paid premiums on the "Thomas J. O'Neil" receiver's bond

for the years 1940 to 1944 and presented a receipt for payment dated March 1, 1945, the date of the second section of the trial. He also paid premiums on the plaintiff's "Bond of applicant for receiver" and presented a like dated receipt. He allowed the taxes to become delinquent during this period and paid them apparently just before the trial.

Plaintiff did not appear at the trial. Mancuso testified that he had talked with her; that he had told her "what was going on"; that he did not know why she was not in court but that "maybe she is in town," he did not know. Her absence was not explained.

The trial court found that any interest the plaintiff had in the property was junior and inferior to that of the defendant Filley under her judgment; that the quitclaim deed was void as to the judgment creditor Filley; that the mortgage was without consideration and void and should be canceled of record; that the title to Lot 36 had vested in the defendant Filley by virtue of the sheriff's deed; that Lot 9 should be subjected to sheriff's sale and the proceeds applied to the Filley judgment; that the defendant Mancuso should pay the rent received from Lot 9 (less certain charges) into court to be applied on the Filley judgment; and that defendant Filley was entitled to a judgment for the rents collected (less certain charges) from Lot 36.

The court decreed that defendant Filley have judgment against Mancuso for the net of the rents received on Lot 36; ordered that Lot 9 be sold as upon execution and the proceeds applied to the Filley judgment; ordered Mancuso to pay the net rentals from Lot 9 into court; and ordered the mortgage canceled and released of record.

From this judgment plaintiff appeals, assigning here as error that the decree is not sustained by evidence or law. Plaintiff urges that uncontroverted evidence ordinarily should be taken as true, and uncontradicted evidence which is not improbable or unreasonable cannot be disregarded; that the evidence shows there was a consideration for the note and the mortgage; that a preexisting debt is a sufficient consideration; that the mortgage lien is superior to

the lien of defendant Filley's judgment and superior to the sheriff's deed to Lot 36; and that the lien of the mortgage was not extinguished by the deed. Plaintiff states that she had elected to stand upon her mortgage; it being to her disadvantage to rely upon the deed.

Triers of fact are not compelled to accept as absolute verity every statement of a witness not contradicted by direct evidence. The persuasiveness of evidence may be destroyed even though uncontroverted by direct testimony. Circumstantial evidence is equally competent with direct testimony. The relative convincing powers of the two classes of evidence are for the determination of the triers of fact. Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh undisputed parol testimony against facts and circumstances in evidence from which a conclusion may properly be drawn that the parol testimony is false. A substantial conflict may arise even though all the evidence is produced by one party. See Morris v. Equitable Life Assurance Society, 109 Neb. 348, 191 N. W. 190; Leon v. Kitchen Bros. Hotel Co., 134 Neb. 137, 277 N. W. 823; Jennings v. Campbell, 142 Neb. 354, 6 N. W. 2d 376; 32 C. J. S., Evidence, s. 1038, p. 1089; 20 Am. Jur., Evidence, s. 1180, p. 1030.

It is to be remembered that the trial court had the advantage of hearing the witness Mancuso testify, and of observing his demeanor while testifying. But disregarding that, we have no difficulty from a study of the cold record in reaching a conclusion in accord with the judgment of the trial court that the mortgage was without consideration and void. Further, we are of the opinion that this case is saturated with evidence of fraud.

Mancuso was an interested witness. He testified that he took plaintiff's money in 1932 as an investment for her, yet he gave her no evidence of the debt until the following year.

The note, purporting to evidence the investment, on its face bears no interest for five years, a total of six years after Mancuso claims to have borrowed the money. Not only does the mortgage not bear the same date as the note, but obviously whoever drew the mortgage did not have the note before him, for it is not accurately described as to date or contents. The mortgage was not recorded for over five years after its purported date and then only after defendant Filley was undertaking to enforce payment of her judgment. Mancuso testified that he paid interest on this note for five years when by its terms no interest was payable, and then he turned it over to an attorney to foreclose against himself, and without any endorsement of interest paid on the note. After the note matured Mancuso paid no interest for five years. Mancuso offered no evidence other than his own statement of the payment of interest. He produced no documents or records evidencing the payments. And yet, when required by the court to make a report of his collections of rents and expenditures on the property, he produced copies of purported records showing a detailed itemization over a period of years. Incidentally, he was unable to produce receipts for large items of expenditure claimed.

Mancuso's attorney in other litigation brought the action for the plaintiff. After the attorney died Mancuso got the mortgage back from the executor of the attorney's estate. Mancuso's office associate was appointed the receiver, and after the death of the receiver Mancuso handled the property as his own, collecting and not reporting the rents to the court. He not only continued to pay premiums on the receiver's bond for years after the latter's death, but paid the premiums on the plaintiff's bond for a like period, and that in an action where there was an alleged adversary issue between them. Mancuso's attorney in other litigation appeared in court as plaintiff's attorney. Mancuso appeared without counsel.

The record as to the plaintiff is no more convincing of an honest transaction than is the testimony of Mancuso. It is

not unusual for an attorney in this state to verify a pleading where he has the documents, upon which it is based, in his possession. Authority to do so is conferred by statute. See sec. 25-831, R. S. 1943. Plaintiff's failure to verify the petition becomes important, however, in view of her complete absence from any connection, except for the use of her name, with this litigation. After the action was started Mancuso's (the debtor's) office associate became receiver. After the rents were channeled into the receiver's hands, and subsequently directly into Mancuso's hands, the litigation languished for five years. Plaintiff did not advise the court of the death of the receiver. The only evidence in the record indicates that the action was then brought to trial, not at plaintiff's insistence but at that of defendant Filley. From 1939 to 1945, plaintiff neither asked for an accounting of rents in the foreclosure nor for the payment of interest on or the principal of her alleged investment. During the long pendency of this litigation she took none of the procedural steps that were available and normally would have been used to secure an application of the rents to the debt which she claimed was due. Even at the trial she did not seek an accounting of rents nor to reach these funds. The accounting, such as it was, was forced by the defendant Filley. When the action, which involved the validity and recovery of her alleged investment, came to trial she knew of it and she remained away, not sufficiently concerned even to appear in the court room.

There was no showing that there was any consideration passing from the plaintiff to the defendants Mancuso for the quitclaim deed, nor is there evidence that plaintiff either asked for or knew that the deed was being made conveying this property to her. We find some difficulty in reconciling Mancuso's statement that the deed was given to save plaintiff the expense of foreclosure, which would ordinarily mean that title would pass, and his statement that it was given for additional security. Defendant Filley's judgment had been secured prior to that time. The deed did not serve Mancuso's purpose in getting the property out from under

the judgment, hence the production and use of the note and mortgage.

We need not further discuss the record. Standing alone some of these facts and circumstances would not create even a suspicion of fraud. Taken together they create a conviction that material parts of the parol testimony of the witness Mancuso are false and that the note, mortgage, and deed were prepared and used for the sole purpose of defeating the defendant Filley in her effort to satisfy a part of her judgment from the sale of the Mancuso property. To accomplish this purpose the jurisdiction of a court of equity was invoked and its procedure used for a time to assist in the perpetration of the fraud. The trial court refused to sanction the fraud and by its decree affirmatively denied its consummation.

The judgment of the trial court is affirmed.

AFFIRMED.