JAMES AUSTIN, RESPONDENT, *v.* JANE OAKES, INDIVIDUALLY AND AS EXECUTRIX OF WILLIAM HUTCHINSON, DECEASED, AND OTHERS, APPELLANTS.

*Will — construction of a power of appointment given thereby.*

In this action, brought for the construction of the will of the defendant's (Jane Oakes) testator, it appeared that the testator gave to his wife all his property in trust, to apply the income to her own use during her life, and at her death directed that the estate should be divided amongst her four sons, naming them, and a daughter, naming her, and the issue of her deceased son John W. Austin, and in such shares and proportions as his wife might, by her last will and testament, direct and appoint; and in default of such direction and appointment that the said estate should go to her five children then living, and the issue of said deceased son in six equal shares, the issue of said deceased son to take one of said shares; and should either of said intended beneficiaries die before that one's intended share vested, that then the issue of the one so dying should take the portion intended for such deceased beneficiary.

By a codicil to his will the testator directed that, on the death of his wife, the share of his estate, to go to his son James and his grandson Charles, should be held by his surviving executors in trust for them during their lives, and at their respective deaths the principal should go to their issue, if any; if none, then that the same should fall into his general estate, or as his wife should by will direct.

*Held,* that no disposition was made of the shares of any of the living children in case of his or her death without issue.

That, in that contingency, the testator contemplated that his wife should do with the share of the child so dying without issue, whatever she might elect.

APPEAL from a judgment entered in New York county, upon the trial of this action before the court without a jury.

The action was brought to obtain a construction upon the will and codicil of William Hutchinson, otherwise known as

William Austin. The will of William Hutchinson provided as follows : " First. I give, bequeath and devise unto Mrs. Winifred Austin, who resides at my house, No. 248 West Twenty-third street, in the city of New York, where I reside, all my estate, real and personal, upon trust, to hold the same during her life ; to apply the rents and income thereof to her own use for that period, and at her death, the said trust estate shall be divided among her four sons, James Austin, Robert Austin, Charles Austin, Richard Austin, her daughter, Jane Oakes, and the issue of her deceased son, John W. Austin, in such shares and proportions as she may, by her last will and testament, direct and appoint ; and in default of such direction and appointment, the said estate shall go to her five children now living, and the issue of her said deceased son, in six equal shares. The issue of said deceased son to take one of said shares ; and should either of said intended beneficiaries die before that one's intended share vests, then the issue of the one so dying shall take the portion intended for such deceased."

By his codicil the testator, among other things, provided as follows : " I direct that, on the death of my said wife, the share of my estate to go to our son James and our grandson Charles, now known as James and Charles Austin, shall be held by my surviving executors in trust for them during their lives, and the interest thereof applied to their use ; and at their respective deaths the principal shall go to their issue, if any ; if none, then the same shall fall into my general estate, or as my said wife shall, by will, direct."

*Noah Davis* and *Theodore W. Dwight*, for the appellants.

*W. S. Logan*, for the respondent.

Brady, J. :

The testator gave to Mrs. Austin all his property in trust to apply the income to her own use during her life, and at her death provided that the estate should be divided amongst her four sons, naming them, and a daughter, naming her, and the issue of her deceased son, John W. Austin, and in such shares and proportions as she may, by her last will and testament, direct and appoint ; and in default of such direction and appointment, the said estate shall go to her said five children now living, and the issue of said

deceased son, in six equal shares; the issue of said deceased son to take one of said shares; and should either of said intended beneficiaries die before that one's intended share vests, then the issue of the one so dying shall take the portion intended for such deceased. It will be observed that no disposition of the share of any living child is made in case of his or her death without issue, the only provision relating to that subject being, that the intended share in case of death should be taken by the issue of such person dying. The codicil which, so far as it affects the question, is as follows: "I direct that on the death of my said wife the share of my estate to go to our son James and our grandson Charles, now known as James and Charles Austin, shall be held by my surviving executors, in trust for them during their lives, and the interest thereof applied to their use, and at their respective deaths the principal shall go to their issue, if any; if none, then the same shall fall into my general estate, or as my said wife shall, by will, direct," does not correct this seeming omission, except as to the share given to James and the grandson Charles, which, in case of death, is to go to the issue, if any; if none, then the same, as the codicil declares, "shall fall into my general estate, or as my wife shall, by will, direct."

The first thought which presents itself in the natural order of review is, what was the intention of the testator, to be gathered from these instruments as to the disposition by his wife of the share of the grandson Charles in case of his death before her, without issue. For this is the guiding and controlling principle in the construction of wills, and when steadily kept in view overcomes many obstacles and rejects many refinements which too much elaboration has uselessly if not unfortunately impressed upon the courts. Was the share to be given to one of the class named or to any person whom she might select? It must be conceded that it is not an easy task to answer the question in contemplation and consideration of the elaborate briefs submitted, and the wide range of thought and research which they contain, but approached in the manner and guided by the principle suggested it would seem as if, after full examination, free and untrammeled by abstruse propositions, and treated by and resting upon the doctrine of intention, the response must be that, if the contingencies contemplated should occur, namely, the death of the son or grandson without issue, his

wife could do with the share of either whatever she might elect. There is no restraint and none was intended. The power conferred on her of distributing the whole estate in such proportions as she chose to adopt was the expression of unlimited confidence in her judgment and sense of justice, and the testator avoided expressly any absolute disposition of the shares of James and his grandson Charles, beyond their issue, unless his wife failed to exercise the power of disposition given her. He confided that part of his estate to her judgment, relying upon her ability and her convictions of what was right to be done. This confidence in her was thus clearly declared, as it had been in the will itself, where greater power was conferred, covering as it did the whole estate, the enjoyment of which by her during her life was first provided for. The phraseology of the clause in the testator's codicil as to the destiny of the share of Charles in case of his death, without issue, gives rise, it may be, to doubts and uncertainty, but a careful consideration of it, keeping in mind the general scope, object and design of the testator, justifies the impression that the words "or as my wife shall by will direct" were added after the codicil was prepared, and from a feeling that he had arbitrarily withdrawn the disposition of it from the general trust he had conferred on his wife, and changed it accordingly, intending to provide that it should fall into his general estate unless it was disposed of by her. The phrase would seem to have been written on the spur of the moment, and at the foot of the paragraph to avoid the necessity of recopying or interlineation. In discussing questions of intent we may justly and instinctively resort to the apparent characteristics of the transaction affecting it, guided by knowledge and experience of the varied modes employed by the human family to the accomplishment of results desired, or to the saving of labor. However this may be, the whole scope of the *will* being considered, it substituted her judgment for his if she chose to act, and this was prompted by the relation she bore to him, their marriage being suppressed. It was equivalent to saying, "these are your children; I have not acknowledged them as mine also. Do with my estate in dividing it amongst them as you wish, I regard you as the proper if not the better judge of their merits and claims."

It is true that she could not, under the power thus given, repudiate any one of them, but, as to the extent of the shares, she was

as absolute as he could have been, and equally so as to any part of the estate over which he gave her abundant authority, substituted her indeed for himself, giving her his *jus disponendi* in express terms. If he had made such a disposition as suggested, and as she did, no one could have questioned his power, and she, as his *alter ego*, could do it as fully and as well It is not possible, without violence, to reject the meaning of the words " or as my wife shall, by will, direct." It is possible, *arguendo*, by specious reasoning, to convert their meaning into something different from that intended, and brave intellects have essayed, and ably essayed to do it, and it may be said have apparently done it, but the disposition she did make of the estate, under the power, was nevertheless in conformity with it. The grandson Charles having died without issue, and before her death, she gave by a codicil his share, which she had duly appointed to him by her will, to her grandsons William A. Oakes and Frederick Oakes, thus meeting the emergency occasioned by his death. The learned justice, in the court below, thought the whole provision of the testator's codicil inapplicable, so far as it related to the shares of either of the persons named in it, in case either died before Mrs. Austin ; that she could not, by will, give any interest which could possibly vest before her death, and had no power to dispose of any portion of the estate upon the theory that the share intended to be allotted to Charles was taken out of the provisions of the will of the testator. He held, therefore, that the allotment to Charles was invalid or of no value, because her will had never became operative before his death, and because, as already suggested, the testator's codicil conferred no power upon Mrs. Austin to do what she did, and it had become inoperative so far as it related to the supposed share of Charles Austin. And he held, further, that as there had been, in relation to that part of the estate, no proper exercise of the power of appointment, there was a defective, and therefore no execution of the power. The learned justice also held that the omission or defect was not affected favorably, as to any part of the estate, by the provisions of 1 Revised Statutes (p. 737, § 123, article on Powers), which declare that "no disposition, by virtue of a power, shall be void in law or in equity on the ground that it is more extensive than was authorized by the power ; but every estate or interest so created, so far as embraced by the terms of the power, shall be valid," for the reason

that she did not transcend her power or make the appointment more extensive than authorized, but less, the proposition being that if one be authorized to dispose of the whole estate he could not dispose of a part of it and allow the rest to descend because of a failure to appoint. The first proposition of the learned justice might be regarded as correct, and that the provisions of the codicil became inoperative as to Charles' share if we reject the words " or as my wife shall, by will, direct," which do not seem to have been considered, no reference to them having been made in the opinion delivered. This may have arisen from decided convictions of their inutility for any purpose in the view he adopted of the effect of the codicil.

The learned justice in the court below, it is thought, was in error in the assertion that the will, as contradistinguished from the codicil, had provided for the death of Charles before his mother, without issue. It has already been shown that the will was silent on that subject, and that upon the death of any one of the beneficiaries, without issue, the share descended, inasmuch as it was only provided therein that should either of the beneficiaries die before that one's intended share vested, the issue of the one so dying should take the portion intended for such deceased. If there were no issue, then, unless the appointment of that share of Charles could be made under the codicil in pursuance of the words " or as my said wife shall by will direct," it could not be made at all. The language of the will contemplated an appointment at any time after the death of the testator, and the continuous power of making such changes as events affecting the execution of the power demanded. There is no doubt of the right of revocation. (Sugden on Powers, 461 *et seq.*)

A codicil is at once amalgamated in the will and becomes a part of it, and the will having given a share to the grandson Charles, and the codicil having anticipated his death before her's, authorized the change required by that event. The codicil of her husband contemplated the exercise of the power of appointment during her life and that of Charles and after his death, and hence provision for such a contingency. If any other rule prevailed, then, if the view adopted of the will be correct, the testatrix must, it would seem, have awaited the approach of her own death in order to be certain that the death

of one of the beneficiaries, James or Charles, would not defeat the
execution of the power as to the whole estate. When her will was
made the estate carved out, vested subject only to the exercise of the
power prompted by such changes as she might think had become
necessary in order to employ the whole power of appointment.

The difficulty of determining what was meant by the testator, as
to the disposition of the share of Charles, is increased, perhaps, by
the use of the word "or," and it may doubtless well be contended
that two modes of disposition of it were provided, namely: One by
which it was to become a part of the general estate, and thus
augment that estate for distribution among the survivors of the
class designated in the will, or become subject to the use of the
power given to the wife of the testator for its distribution, and for
the reason that the children had been provided for in the will, and
the wnole estate appropriated in six shares with which the testator
did not wish to interfere further. In this connection it may be
instructive to ascertain what is the definition of the word "or," by
the lexicographers. In Worcester, it is said to be a disjunctive
particle that marks an alternative generally corresponding to either,
as "*either* this or that." And in Webster, it is said to be a con-
nective that marks an alternative, as "you may read or may write —
that is, you may do one of the things at your pleasure, but not both."

The application of this definition, in completing the sentence,
would result thus : "If none, then the same shall fall either into my
general estate, or as my wife shall by will direct." The alternative
is thus clearly expressed, which is given in the definition, and leaves
no doubt of the intention." If the plain and definite purposes of
the will are endangered by inapt or inaccurate modes of expression,
it is our duty to subordinate the language to the expression. In
such a case the court may reject words and limitations, supply them,
or transpose them, to get at the correct meaning. (*Phillips et al.*
v. *Davies et al.*, 92 N. Y., 204, and cases cited.)

Supplying the word "either," and thus expressing an alternative,
the meaning of the word "or," as interpreted, is made clear. To
carry out the other proposition, namely, that the share of Charles,
if he died without issue, should fall into the general estate and be
distributed *according to the provisions of the will*, as the wife of
the testator might direct under the power of appointment, would

involve the exercise of extraordinary authority and radically change the seeming intention of the testator as developed    Indeed, it would reduce the number of shares into which the estate had been divided by him by his will, and thus endanger the power of appointment which related to the division thus created.   By the construction adopted, the division made is in harmony with that contemplated, namely, into six shares, and the beneficiaries are all of the blood of the testator.    There are no precise guides to a solution of this question springing from the adjudicated cases, other than those resorted to herein.    The numerous briefs submitted are full and exhaustive of the law, and in the speculative region of philosophical inquiry, and display ingenuity and research, industry and zeal, but the case must be determined by resort to the intention of the testator, which, once found, should end all controversy.

As is said in the recent case of *Shephard* v. *Gassner* (41 Hun, 326): "If the intention of the testator can be ascertained from the instrument, on very well established principles it must prevail. The rule is founded upon common sense, the doctrine of natural justice, and the determination to dispose of the estate as the owner intended should be done.   Any rule to the contrary, by which the design of the testator in the disposition of his property is frustrated, would be in antagonism to any of those principles, and could not be sustained.   Courts have no power and, it is trusted, have no disposition to make wills; and, although in consequence of ambiguities arising from ignorance of the law of uses and trusts, and sometimes from infelicities of expression, they are called upon to construe and interpret wills, and may, in the exercise of that duty, mistake the intention of the testator; nevertheless, it is the best that can be done, under the circumstances, in the administration of the law."

It is the primary object in the construction of all wills.   (*Tilman* v. *Davis*, 95 N. Y., 30.)   In considering the power conferred by the testator, the provisions of the Revised Statutes must prevail. (1 R. S., 732; *Hutton* v. *Benkard*, 92 N. Y., 295, 304; *Jennings* v. *Conboy*, 73 id., 233.)   The doubts, difficulties, complications and learning of the common law courts and courts of equity on the subject are scattered by them.   The technical, abstruse, dangerous refinements which prevailed in that realm are resolved, and no doubt greatly in aid of the administration of justice, which sometimes failed

from their application. (*Jennings* v. *Conboy, supra.*) The present system is complicated enough, but it may be, and doubtless is, the best that can be devised in view of the effect of the system abjured.

But it is not necessary to invoke these provisions for the purposes of this opinion, inasmuch as neither the trusts nor the power conferred are assailed as invalid, the question being solely *in limine* whether the power, as exercised, was within the sphere of the appointment. It is thought that it was for the reasons already given. This view renders it unnecessary to consider whether the power, if not properly exercised as to the whole estate, is valid as to the shares other than that of Charles.

For these reasons the judgment appealed from should be reversed and the will and codicil of Mrs. Austin sustained, so far as they assume to exercise the power given her by her husband, and the estate created under such power declared valid.

DANIELS, J., concurred; BARTLETT, J., not voting.

Judgment reversed.