JOHN K. BERRY, trustee, vs. HARRISON DUNHAM, executor, & others.

BENTLEY W. WARREN & another, trustees, vs. RECTOR AND BOARD OF VISITORS OF THE UNIVERSITY OF VIRGINIA & others.

Suffolk.    January 22, 1909. — May 21, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Trust*, Creation, Spendthrift trust.    *Devise and Legacy.*

A father made a deposit with the Massachusetts Hospital Life Insurance Company of $25,000 in trust for the benefit of his son H.  By a contract in writing between the donor and that company it was provided that during the life of H. the company should pay the income to the donor, for his use during his life, and at his death should pay it to the donor's brother for the benefit of H. " payable to him at his discretion, in such sums as he may think judicious."  At the death of H. the trust fund was to be paid to the donor or his executors or administrators.  The contract further provided as follows : " If the grantees of this annuity shall at any time become bankrupt or insolvent, or if their interest under this annuity shall be attached or seized on any process of law or in equity, their right to receive payment of the annuity in money shall forthwith cease, and thereafter, the company instead of paying said annuity in money to said grantees, shall retain the amount in their hands, and thereafter " shall apply it as directed.  The testator died before his son H.  The fifth paragraph of his will was as follows : " I give and bequeath to each of my children living at my decease the sum of $1,000, which is to be held in trust by my executors and to be paid or to be expended by them for the support of the children respectively during the year after my decease; and it is to be paid or expended in such sums and in such manner as may seem to my executors judicious."  The sixth paragraph of his will was as follows : " Having invested in the Massachusetts Hospital Life Insurance Company . . . a sum for the benefit of each of my children, the income of which is for their support respectively ; in case the income does not amount annually to $1,200 for each respectively, I direct my executors to supply any deficiency from that sum from the income of my other estate — so that each may have $1,200 for their support.  And the $1,000 to be used for my son H. under the fifth item of this will, with the above provision, is to be in full of his portion of my estate, I being convinced that $1,200 per annum for his support will be sufficient for all his necessary wants and that more would be injurious."  *Held*, that the contract and the sixth paragraph of the will must be construed together, that they created a trust to be administered wholly by the trustee under the contract, and that the expenses of administering the trust were to be deducted from the income in estimating the deficiency which must be supplied by the executors of the will to the trustee under the contract to give to H. an income of $1,200 a year.  *Held, also,* that under the terms of the trust H. had no power to alienate the income which was payable to him at the discretion of the trustee, having no right to dispose of it until actually in his possession.

BILL IN EQUITY, filed in the Supreme Judicial Court, as amended, on July 13, 1906, by the trustee under a contract made on February 15, 1879, by the Massachusetts Hospital Life Insurance Company with Arthur W. Austin, late of Milton, for the benefit of Henry W. Austin, his son, praying for instructions as to his duties as such trustee under the contract in connection with the sixth article of the will of Arthur W. Austin proved on September 3, 1884.

ALSO ANOTHER BILL IN EQUITY, filed in the Supreme Judicial Court on October 4, 1907, by the trustees under the will of Arthur W. Austin, praying for instructions.

The cases were referred to William H. H. Emmons, Esquire, as master, who filed a report. Later the cases came on to be heard by *Morton*, J., who reserved them upon the master's report, the exceptions thereto in each case and so much of the pleadings as might be material, for determination by the full court, such decree to be entered as law and justice might require.

The contract above referred to was as follows:

"Annuity in Trust.

"The Massachusetts Hospital Life Insurance Company in consideration of the principal sum of twenty-five thousand dollars and        cents, received by them of Arthur W. Austin for the benefit of his son Henry W. Austin of Milton in the State of Massachusetts in trust as heretofore mentioned, the receipt whereof is hereby acknowledged, do hereby promise and agree to and with the said Arthur W. Austin, his executors and administrators, that the said company shall and will invest the same in bank or other stock, or in real estate, or place the same out at interest on mortgage or other security at the discretion of the directors; and that the said company shall and will yearly and every year during the natural life of said Henry, pay or cause to be paid, to said Arthur for his use during his life, and at his decease to be paid to Henry D. Austin, brother of said Arthur if living, for the benefit of said Henry, payable to him at his discretion, in such sums as he may think judicious. If said Henry D. shall have deceased the actuary of said company for the time being to appoint some trustworthy person to act, in yearly payments on the first day of January in each and every year during the natural life of said Henry, (unless added

to the principal sum as provided below) the first payment to be made on the first day of January next the same rate of interest on said principal sum as the said company shall actually make and receive upon their capital stock paid in, and the other property in their possession, including real estate, stocks of the United States, bank or other stocks, notes, bonds, and mortgages, after deducting all necessary expenses and charges (excepting office rent and the salaries of the company's officers and servants) and all actual losses by bad debts or otherwise, not arising from the actual fault of the company or their servants, and also half of one per centum per annum for the expenses of their office, and the labor, trouble and responsibility of investing, taking care of, and managing said Trust property. The said principal sum received of said Arthur to be invested and managed, and the amount of the income thereof to be estimated, ascertained and determined by the directors of said company, in the way and manner provided in the extract from the article on Annuities in Trust, printed at the bottom. Interest to commence August 15, 1879.

"If the grantees of this annuity shall at any time become bankrupt or insolvent, or if their interest under this annuity shall be attached or seized on any process of law or in equity, their right to receive payment of the annuity in money shall forthwith cease, and thereafter, the company instead of paying said annuity in money to said grantees, shall retain the amount in their hands, and thereafter, while the money remains in the hands of this company, shall apply and expend the same, as it shall fall due, in such way and manner as said Arthur, his executors or administrators shall in writing direct and appoint; or in default of such directions and appointment, the directors of said company shall, at their discretion, either appropriate the same for the use and benefit of any child or children of said grantees, in such way and manner as they may think expedient, or shall add the income thereof to the principal sum to increase the same, to be disposed of in like manner as is provided in relation to said principal sum on the death of said grantees, or shall apply or expend the amount of the income from time to time as said directors may deem to be most in accordance with the true intent and meaning of this contract.

" And the said company, for the consideration aforesaid, further promise and agree that, in sixty days after the decease of the said Henry W. Austin they will assign, transfer, and pay the amount of the aforesaid principal sum (or such part thereof as shall not have been lost by bad debts or otherwise, without the actual fault of said company or their servants) and all interest then due thereon at the time of said death, in real estate, stocks, notes, bonds, and mortgages, belonging to said company, all, any or either of them, at the pleasure and discretion of the directors, at the prices at which the same respectively shall stand charged in the books of the company at the decease of said Henry W. in the way and manner provided in said extract from said article, to said Arthur W. Austin, his executors or administrators.

" In witness whereof, the said Massachusetts Hospital Life Insurance Company have, by their actuary and secretary duly empowered for this purpose, signed and delivered this contract, this fifteenth day of February, one thousand eight hundred and seventy-nine.

" J. C. Braman,                     Samuel C. Cobb,
    Secretary,                     Actuary."

Henry D. Austin died before Arthur W. Austin, and, upon the decease of the latter, one James W. Austin was appointed and served as trustee, who, being deceased, was succeeded by one Walter Austin, who was succeeded by the plaintiff in the first case.

The fifth and sixth articles of the will of Arthur W. Austin were as follows:

" 5th. I hereby give and bequeath to each of my children living at my decease the sum of One Thousand Dollars, which is to be held in trust by my Executors and to be paid or to be expended by them for the support of the children respectively during the year after my decease, and it is to be paid or expended in such sums and in such manner as may seem to my Executors judicious.

" 6th. Having invested in the Massachusetts Hospital Life Insurance Company of which Samuel C. Cobb is actuary on the 15th of February, 1879, a sum for the benefit of each of my chil-

dren, the income of which is for their support respectively, in case the income does not amount annually to $1,200 for each respectively, I direct my Executors to supply any deficiency from that sum, from the income of my other estate, so that each may have $1,200 per annum for their support. And the one thousand dollars to be used for my son Henry W. Austin under the fifth item of this Will with the above provision is to be in full of his portion of my estate, I being convinced that $1,200 per annum for his support will be sufficient for all his necessary wants, and that more would be injurious."

On February 7, 1903, Henry W. Austin executed an instrument purporting to assign and transfer to two persons named, to be divided between them proportionally, " all income and moneys hereafter payable to me as beneficiary under terms of the will of my late father, Arthur W. Austin, duly probated in the Probate Court, Suffolk County, Massachusetts, whereof Walter Austin is now trustee; To have and to hold said income and moneys to their own use and benefit until said sum and my notes to them with interest be duly paid." The assignment was made to secure the repayment of certain sums of money lent and to be lent to the assignor by the assignees and the payment of certain notes given by him to them.

*J. K. Berry,* for himself as trustee, read the papers in the first case.

*J. K. Berry & E. C. Upton,* for Berry, trustee, as a defendant in the second case, submitted a brief.

*C. R. Lamson,* for Bentley W. Warren and William Endicott, Jr., the trustees under the will of Arthur W. Austin, as defendants in the first case and as the plaintiffs in the second case, made a statement of the second case in which such trustees sought for instructions.

*P. H. Kelley,* for Henry W. Austin.

*H. Dunham,* for himself, as executor of the will of Lorenzo F. Papanti, and Leroy J. Ellis, claiming under the assignment from Henry W. Austin.

*H. Winn,* for George F. Washburn and Lindsay Swift, holders of drafts on Berry, trustee, given by Henry W. Austin.

*H. J. Coolidge,* for the University of Virginia, which was the final residuary legatee, and to which Mary Austin Carroll, who

was the residuary annuitant, had assigned all her share in the residuary income above a certain amount.

The Massachusetts Hospital Life Insurance Company appeared in· the case as a stakeholder, but was not represented at the argument.

BRALEY, J. Having previously purchased an annuity for the benefit of his son, Henry W. Austin, if he survived him, the testator when he came to dispose of his estate further provided, in the sixth clause of his will, that, if the income from the annuity did not annually produce the sum of $1,200, the deficiency should be supplied by the executors.

By the contract, to which express reference is made in this clause, the income was to be held in trust until its termination by the death of Henry, to whom no part of the capital was given. *Sawyer* v. *Cook*, 188 Mass. 163, 166. If instead of using the scheme of administration already perfected, the testator had intended that the deficiency, if any, should be paid directly to his son, he would have so provided. But, having received the income during his life, he must have known the average return, and with this knowledge directed that the difference between the income and the maximum amount, which might be increased under the first codicil, if he survived his sister Mary, should be supplied out of his remaining estate. The income had been put in a trust which would not terminate until the death of the surviving annuitant, and, when he made this further testamentary provision, the testator manifestly intended that the entire amount without division should be administered by the trustee, even if his services might not be gratuitous, rather than a part by him and the remainder, whether small or large, directly paid over to the beneficiary. *Sells* v. *Delgado*, 186 Mass. 25.

The amount established by the will is the net sum to be furnished, and all necessary expenses of the administration of the trust as one fund are to be taken out of the income, and the difference between the balance and the annual provision for the son's support measures the deficiency which the executors were directed to supply to the trustee. Under the residuary clause, this duty now devolves upon the trustees, and the income of ˅the residuary legatee for life, or the University of Virginia, which by assignment from her has become vested with a partial

interest therein, is subject to this reduction. *Endicott* v. *University of Virginia*, 182 Mass. 156.

But, if what we have said disposes of the exceptions of this defendant to the master's report as to whether a trust was established, whether the fund was to be treated as entire and whether the expenses of its administration were to be included in estimating the deficiency with which the residue was chargeable, there remains for decision the principal question, which is raised by the exceptions of the other defendants, whether the fund was alienable or subject to attachment for the debts of Henry W. Austin.

It may be said at the beginning, that this question was not decided by *Endicott* v. *University of Virginia*, 182 Mass. 156, as it was not referred to or involved in that decision. If, as argued by counsel for the creditors who claim under assignments or orders, the contract for the annuity was entered into and the will published before the decision in *Broadway National Bank* v. *Adams*, 133 Mass. 170, adjudicating that the founder of a trust may secure the income to the beneficiary without the power of alienation by him or being subject to attachment by his creditors, the decisions in *Hall* v. *Williams*, 120 Mass. 344, and *Minot* v. *Tappan*, 127 Mass. 333, 336, which antedated both instruments, had clearly recognized this right. The construction to be given then, as to whether there was an absolute gift of income or only a qualified interest not within the control of the beneficiary, well may rest on the law of those decisions as interpreted in the leading case. *Dana* v. *Dana*, 185 Mass. 156, 158. No set form of words is necessary to create such a trust, but the intention of the testator, or settlor, when ascertained must control. In the present case this is to be gathered from the contract and the will construed as one instrument. *Thayer* v. *Wellington*, 9 Allen, 283, 292. *Newton* v. *Seaman's Friend Society*, 130 Mass. 91, 93. A recurrence to the second paragraph of the contract shows that the donor did not intend that attaching creditors or an assignee in bankruptcy or insolvency should reach or succeed to the income, for it is expressly stated that upon the happening of either event the right of the beneficiary who is within the designation of " grantees " to receive the payment of the annuity should forthwith cease. If with

this indication of the testator's thought we now recur to the will, the sixth clause speaks of the annuity previously purchased for each of his children, "the income of which is for their support respectively," and the deficiency is provided for, "so that each may have" a maximum fixed sum "for their support." The testator, as to his son Henry, adds, however, that this yearly allowance "for his support will be sufficient for all his necessary wants, and that more would be injurious." The habits of the son during the father's life do not appear, but, when the size of the estate disposed of is considered with the liberal provisions made for the other children, one of two conclusions is suggested, either an unjust discrimination was intentionally made, of which there is no evidence, or from the general tone of the expressions used, the improvidence of the son had become such that the testator believed his further bounty, if conferred, would be either squandered or lost through misfortune. In the light of the will as reflecting his continued purpose to secure the means of support for his son, the first paragraph of the contract should now be read. It is carefully phrased, and provides that upon the donor's death the accrued income is not to be paid directly to the annuitant by the company but is to be turned over to a trustee for his benefit, "payable to him at his discretion, in such sums as he may think judicious." The testator intended his son should not have the power to alienate or anticipate the income, and thus probably be left without any means of support as the income accrued, and to carry out this purpose substituted the instrumentality of a trustee, which otherwise would have been unnecessary, as the administration by the company would have been sufficient. By this construction, all the provisions of the contract and the will are given a consistent effect, and it is only when the money is actually received by him that his right to dispose of it begins, for, until then, the trustee in the exercise of a sound discretion can refuse to pay over anything but may apply the income as he deems advisable for the benefit of Henry. *Wemyss* v. *White*, 159 Mass. 484, 486. *Nickerson* v. *Van Horn*, 181 Mass. 562, 565, and cases cited.

The beneficiary having no power to alienate the income, his assignment of it or drafts and orders drawn by him on the trustee in payment of debts, are unenforceable, and the excep-

tions of these defendants to the master's report also must be overruled, and the report confirmed.

It further follows that the income in the possession of the company, which has accrued pending the litigation, and any deficiency remaining to be supplied by the trustees under the will, are payable to the trustee, Berry, by whom the entire amount is to be administered. *Sells* v. *Delgado, ubi supra.*

*Decree accordingly.*