LANCASTER COUNTY BANK, APPELLANT, V. DEEM MARSHEL ET AL., APPELLEES.

FILED JANUARY 10, 1936. No. 29382.

*Fred C. Foster* and *R. M. Charters,* for appellant.

*Lee Basye, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is an action to foreclose a real estate mortgage upon what is alleged in the petition to be a life interest, and which is described as "The use and possession of and the rents and profits accruing from (described real estate) during the natural life of said Anna Marie Marshel; it being the intention to convey all of the interest that Anna Marie Marshel acquired in and to (described real estate) under the will of John Olson, deceased, which will was duly

admitted to probate in the county court of Lancaster county, Nebraska, on January 14, 1921."

Plaintiff's petition was in ordinary form. It set forth copies of the notes for which this mortgage purports to be given, alleged a default on part of the mortgagors, and prayed for foreclosure and sale.

To the petition, defendant Anna Marie Marshel filed a separate answer and cross-petition. Her answer admitted the signing of the notes and mortgage, alleged want of consideration, and denied every allegation contained in the petition which was not so admitted; alleged that she owned no life interest in the real estate mortgaged; that such real estate constituted a spendthrift trust created under the terms of the last will and testament of her father, John Olson, deceased; and set forth a copy of such will. In her cross-petition, forming a part of the issues, there were set forth at length allegations which may be briefly recapitulated as follows: That the will created a spendthrift trust as to the lands described in plaintiff's petition, and because of this fact the real estate described in plaintiff's petition, as well as defendant's rights therein, are inalienable and not subject to the demands of the creditors of Mrs. Marshel; that Charles J. Warner and Carl E. Berg duly qualified as executors and trustees thereof, and since continue in that capacity; that the trust so created by the will is an active trust; that Charles J. Warner is now, and at all times covered by the petition has been, the president of the plaintiff bank, and that because of the fiduciary relation created and existing between said Warner and this defendant by the terms of the will of John Olson, and the duties imposed thereby, the mortgage and notes in suit herein are voidable, and that defendant elects to annul the same. The defendant thereupon prayed that the notes and mortgage in suit be canceled, and that she be given general relief and her costs. To this pleading the plaintiff bank filed a reply which was, in substance, a general denial.

On the issues thus formed, a trial was had, and at the conclusion thereof the district court found, in substance,

for the defendants and against the plaintiff; found that the will of John Olson created an active spendthrift trust, of which Anna Marie Marshel was a beneficiary, and that her interests therein were inalienable and not subject to the claims of plaintiff; also that Charles J. Warner was the duly appointed executor and trustee nominated by such will, and he duly qualified, and since has continued as such; that because of the fiduciary relations and duties created by the Olson will, added to the fact that said Warner was at all times, and now is, the president of plaintiff bank and a stockholder therein, the instruments in suit are wholly void. Thereupon the trial court, as to defendant Anna Marie Marshel, canceled the notes and mortgage in suit, and denied foreclosure of the mortgage set forth in plaintiff's petition. Plaintiff then filed its motion for a new trial, which was overruled, and from such ruling it appealed to this court.

The record reflects the following facts: That John Olson was the father of the defendant Anna Marie Marshel, and in his lifetime was the owner in fee simple of the lands described in plaintiff's petition. At his death he left a last will which was duly admitted to probate in the county court of Lancaster county, Nebraska, on January 14, 1921. The provisions of this will, so far as material here, are as follows:

"I give and devise the following described real property, to wit: The Northwest Quarter (NW¼) of Section Twenty-three (23); the South Half of the Northeast Quarter (S½ NE¼) of Section Fourteen (14) and the North Half of the Southeast Quarter (N½ SE¼) of Section Fourteen (14), all in Township Eleven (11) North, Range Eight (8), east of the Sixth Principal Meridian in Lancaster county, Nebraska, to Carl Berg and Charley Warner as trustees, upon the following trusts and conditions:

"My daughter, Anna Marie Marshel, shall have the use and possession of, or the rents and profits accruing from, the said Northwest Quarter (NW¼) of Section Twenty-three (23), Township Eleven (11), Range Eight (8), for

and during her natural life, she to pay for said use and possession, or out of the rents and profits therefrom, all taxes levied thereon.

"My daughter, Elizabeth Christina Hatten, shall have the use and possession of, or the rents and profits accruing from, the said South Half of the Northeast Quarter (S½ NE¼) and the North Half of the Southeast Quarter (N½ SE¼) of Section Fourteen (14), Township Eleven (11), Range Eight (8), for and during her natural life, she to pay for said use and possession, or out of the rents and profits therefrom, all taxes levied thereon.

"Upon the death of my daughter, Anna Marie Marshel, if she leaves a child or children or any issue of any deceased child or children her surviving, then and in that event, I give and devise to said child or children or to the issue of any deceased child or children, by representation, the Northwest Quarter (NW¼) of Section Twenty-three (23), Township Eleven (11), Range Eight (8), hereinbefore described, share and share alike, in fee simple.

"If my said daughter, Anna Marie Marshel, dies without leaving any child or children or issue of any deceased child or children her surviving, then my daughter, Elizabeth Christina Hatten, if she survives my daughter, Anna Marie Marshel, shall have the use and possession of, or the rents and profits from, said premises for and during her natural life, and, upon her death, I give and devise said premises to such her child or children or issue of any her deceased child or children, by representation, as shall survive her, share and share alike, in fee simple.

"Upon the death of my said daughter, Elizabeth Christina Hatten, if she leave a child or children or any issue of deceased child or children her surviving, then I give to said child or children or to the issue of such deceased child or children, by representation, the South Half of the Northeast Quarter (S½ NE¼) and the North Half of the Southeast Quarter (N½ SE¼) of Section Fourteen (14), Township Eleven (11), Range Eight (8), hereinbefore described, share and share alike, in fee simple.

"If my daughter, Elizabeth Christina Hatten, dies without leaving any child or children or issue of any deceased child or children her surviving, then my daughter, Anna Marie Marshel, if she survives my daughter, Elizabeth Christina Hatten, shall have the use and possession of, or the rents and profits from, said premises for and during her natural life, and, upon her death, I give and devise said premises to such her child or children or issue of any her child or children as shall survive her, by representation, share and share alike, in fee simple.

"Should neither of my said daughters leave any child or any issue of any deceased child her surviving, then, upon the death of the survivor of my said daughter, I direct that the trustees herein named, or their successors in office, shall sell said premises, namely, the Northwest Quarter (NW1/4) of Section Twenty-three (23), the South Half of the Northeast Quarter (S1/2 NE1/4) and the North Half of the Southeast Quarter (N1/2 SE1/4) of Section Fourteen (14), Township Eleven (11) North, Range Eight (8), in Lancaster county, Nebraska, and distribute the proceeds thereof among such persons as shall, at the death of the survivor of my said daughters, be my next of kin and entitled, under the statutes of the state of Nebraska, in force at that time, to share in my estate as my heirs in the absence of any will and in the proportions determined by said statutes in case of intestate estates.

"If either of my daughters die before my death, the premises described in paragraph two shall descend in the same manner as provided therein had the one so dying survived me. * * *

"I nominate and appoint Carl Berg and Charley Warner as executors of this my Last Will and Testament *and as trustees to carry out the provisions of this my Last Will and Testament* and I hereby revoke all former wills or codicils of wills by me made. If either Carl Berg or Charley Warner die before me I direct that the survivor act as executor and trustee. If both die before me or fail to qualify, I direct that the court appoint some competent

person outside of the beneficiaries of this will as executor and trustee."

It further appears that, in due time after the admission of this will to probate, Charles J. Warner and Carl E. Berg qualified as such executors and trustees in February, 1921, by taking the oath and giving bond as required by law, and entered upon their duties as such. That since that time Charles J. Warner has continued as, and now is, one of the executors and trustees of such last will and testament, and is vested with powers and duties therein conferred. That the notes and mortgage in suit were executed in renewal and settlement of a previous indebtedness of Deem Marshel to the Lancaster County Bank of Waverly. That no part of the consideration upon which the instruments in suit were based was received by Anna Marie Marshel, or inured to the benefit of her separate estate, of which the rights in the land devised to her by the will of John Olson, her father, constituted a part. That Anna Marie Marshel appears in the transaction presented by this litigation as an apparent surety for her husband's preexisting debts. That during the entire period of time occupied by the present transaction, as well as the connected transactions which preceded it, Charles J. Warner was the president of, and a stockholder in, the plaintiff bank. That, in the capacity of president of that institution and in its behalf, he made and executed a contract in writing, bearing date of October 26, 1931, to which Deem Marshel and Anna Marie Marshel were parties of the second part. That this contract in writing provided for the making and delivery to the Lancaster County Bank, by the parties of the second part, of the notes and mortgage in suit, and solely pursuant thereto these instruments were subscribed by the parties of the second part and actually received by the plaintiff bank.

The correctness of the judgment of the trial court is to be determined by a proper construction and application of the provisions of the John Olson will, in the light of the surrounding circumstances.

This jurisdiction has long been committed to the view

that "The statute of uses is not of the law of this state." *Farmers & Merchants Ins. Co. v. Jensen*, 58 Neb. 522, 78 N. W. 1054.

The principle appears well established that, "Prior to the enactment of the statute of uses a person who held land to the use of another had, in addition to his negative duties, the following two affirmative duties: (1) To protect the property against other persons than the beneficiary; (2) to convey the property to the beneficiary or in accordance with his directions. If there was a manifestation of an intention to impose additional affirmative duties, he held upon an active trust." Restatement, Trusts, sec. 69.

In view of the powers conferred and duties imposed on the executors and trustees, specified and enumerated in the will of John Olson, which are affirmative and additional to those embraced within the restatement of the law of trusts quoted above, and which Charles J. Warner and Carl E. Berg are thereby and therein expressly directed as trustees to carry out, it appears that we are dealing with an "active trust."

In addition, the controlling rule of construction in this state is statutory, and embraces the following direction: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected, from the whole instrument, and so far as such intent is consistent with the rules of law." Comp. St. 1929, sec. 76-109.

In the application of this legislative formula, this jurisdiction is committed to the view that "No rule of law is better settled or more in accord with good sense than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No particular words, no conventional forms of expression, are necessary to make an effective testamentary disposition of his property. The

court, without much regard to the canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it. *Albin v. Parmele*, 70 Neb. 740, 98 N. W. 29; *McCulloch v. Valentine*, 24 Neb. 215, 38 N. W. 854; *Lesiur v. Sipherd*, 84 Neb. 296, 121 N. W. 104; *Heywood v. Heywood*, 92 Neb. 72, 137 N. W. 984; *Draper v. Eager*, 112 Neb. 611, 200 N. W. 170." *In re Estate of Combs*, 117 Neb. 257, 220 N. W. 269. See, also, *Nebraska Nat. Bank v. Bayer*, 123 Neb. 391, 243 N. W. 115.

Reading the provisions of the will, as required by the terms of the statute quoted, it will be noted that the lands to which this controversy relates were given and devised to "Carl Berg and Charley Warner as trustees, upon the following trusts and conditions."

Section 30-202, Comp. St. 1929, provides: "Every devise of land in any will hereafter made, shall be construed to convey all the estate of the devisor therein, which he could lawfully devise, unless it shall clearly appear by the will, that the devisor intended to convey a less estate."

The will itself also authorizes and directs the trustees named therein, or their successors in office, upon the death of each of the testator's daughters leaving no child or issue of any deceased child, them surviving, to sell the premises described in said will, which includes the lands affected by this proceeding, and to distribute the proceeds thereof among such persons as shall "then" be "my next of kin," etc.

It follows that the provisions of the will generally constituted an active trust, necessarily to continue until after the death of the immediate devisees, and that the executors were vested with ample powers to execute the same. It also appears that the deceased, at the time of the execution of his will, had two married daughters and this will in substantially identical words directs what benefits each of these daughters shall receive out of the testator's real estate. In the instant case the words employed are, "my daughter, Anna Marie Marshel, shall have the use and possession of, *or* the rents and profits accruing from," the lands described.

In view of the context, and the circumstances of the testator, we may not ascribe to the word "or" employed in the sentence last above quoted any other than its ordinary literal definition. This is expressed by Webster's New International Dictionary (2d ed.) as: "A co-ordinating particle that marks an alternative; as, you may read *or* may write—that is, you may do one of the things at your pleasure, but not both." In view of context, surrounding circumstances, and purposes evidenced thereby, "or", as employed in the language of the will above quoted, may not properly be construed as "and." *Miller v. Philip,* 5 Paige Ch. (N. Y.) 573; *Toothman v. Barrett,* 14 W. Va. 301; *Austin v. Oakes,* 1 N. Y. Supp. 307. So, too, "use" and "ownership" are not synonymous. *State v. Stockwell,* 23 N. Dak. 70, 134 N. W. 767. The right to use is but an incident of ownership, but does not necessarily imply ownership. "In its primary meaning, 'use' as a noun may signify the act of employing anything, or the state of being employed; the act of employing anything, or of applying it to one's service. * * * The state of being used, employed, or applied." 66 C. J. 66. "Possession," as employed in this will, carries the sense of being practically synonymous with "occupation." *Macklem v. Macklem* (1890) 19 Ont. 482. "In its usual sense 'occupation' is where a person exercises physical control over land; and as applied to real property it is, ordinarily, equivalent to, or synonymous with, actual possession; 'possession;' subjection to the will and control." 46 C. J, 895. The alternative benefits provided by the Olson will are "rents and profits." This term "is well understood, and generally it is equipollent with 'profits and gains.' As applied to real estate, the income which does not impair or diminish the fee; or the net income of it; the sum annually yielded by the same." 54 C. J. 384. "Rents and profits" do not necessarily imply physical possession and control of the real estate from which derived. While by the terms of the will the trustees receive the direction that "my daughter, Anna Marie Marshel, shall have the use and possession of, or the rents and profits accruing from," the

land described, the will does not expressly confer upon the devisee the right or power of election, and obviously it was not intended that she should enjoy the alternative benefits at the same time. On the other hand, the fifth provision of the will expressly provides that Carl Berg and Charley Warner are appointed "as trustees to carry out the provisions of this my last will," etc. Manifestly, the power of election between the alternative benefits is vested in the trustees, to be exercised from time to time as the best interests of their trust may require.

In this connection, it may be said: "(1) That where a power of electing is given to trustees, as to the rights of third persons, they are bound to exercise such power most beneficially for the *cestuis que trust*. (2) Reference must always be had, in the execution of a power, *to the end or purpose intended* by the creator of the power, and this end or purpose must be gathered from a construction of the written instrument; and a power must always *be executed bona fide for the end and purpose designed*. (3) A power cannot be executed in favor of the donee of the power, or of his family, unless the instrument specially authorized him so to do. (4) The donee of a power cannot execute it for any pecuniary gain, directly or indirectly, to himself. Nor (5) can he exercise it for any other purposes personal to himself." 2 Perry, Trusts and Trustees (7th ed.) sec. 511a.

From the will as an entirety, and the circumstances surrounding the same, it appears that the object and purpose of the alternative benefits provided for Mrs. Marshel were by and through the exercise of the power of election vested in the trustees to protect this devisee against the result of her own acts, and to protect the interests of the remaindermen against damage to their rights by the acts of Mrs. Marshel, such as waste committed by her, or committed by others with her authority or consent. In other words, it was the plain intent of the testator that, by a proper exercise of the powers vested in his trustees by the terms of his will, his daughter would at all times be protected against

her own improvidence and incapacity, and would be certain of receiving the support which the trust estate, properly managed, would assure her. These features, at least so far as the trustees were concerned, under the facts in this case, amounted to the creation of a spendthrift trust.

The controlling legal principles applicable to the facts disclosed by this record are: "It is now well established that no particular form of words is necessary to create the restriction. Nor is it necessary that the restriction be expressed directly in the language of the will. On the other hand, courts look at all of the provisions of the will, and the circumstances under which it was made, including the condition of the beneficiary, and, if the intent to restrict is reasonably plain from a consideration of all of these features, courts will give effect to that intent." *Jones v. Harrison,* 7 Fed. (2d) 461. See, also, *Higbee v. Brockenbrough,* 191 S. W. (Mo.) 994; *Berry v. Dunham,* 202 Mass. 133, 88 N. E. 904; *Bennett v. Bennett,* 217 Ill. 434, 75 N. E. 339; *Estate of Stambaugh,* 135 Pa. St. 585, 19 Atl. 1058; *Everitt v. Haskins,* 102 Kan. 546, 171 Pac. 632; *Barnes v. Dow,* 59 Vt. 530, 10 Atl. 258; *Roberts v. Stevens,* 84 Me. 325, 24 Atl. 873; *Patten v. Herring & Kelley,* 9 Tex. Civ. App. 640, 29 S. W. 388; *Seymour v. McAvoy,* 121 Cal. 438, 53 Pac. 946; *Mattison v. Mattison,* 53 Or. 254, 100 Pac. 4; *Morrow v. Apple,* 26 Fed. (2d) 543.

"The fact of placing property in the hands of a trustee evidences an intent on the part of the testator to put it beyond the power of the beneficiary to alienate, or his creditors to seize." *Jones v. Harrison,* 7 Fed. (2d) 461. See, also, *Higbee v. Brockenbrough, supra; Morrow v. Apple, supra.*

"If it appears from the will that it was the intent of the testator that the beneficiary should have nothing that she could dispose of, it will be as effectual to protect the trust as if there was an express clause against alienation." *Barnes v. Dow,* 59 Vt. 530, 543, 10 Atl. 258. See, also, *Higbee v. Brockenbrough, supra; Mattison v. Mattison, supra.*

"Any conveyance whether by operation of law or by act of any of the parties, which disappoints the purposes of the settlor by divesting the property or the income from the purposes named, would be a breach of the trust." 1 Perry, Trusts and Trustees (7th ed.) sec. 386a. See, also, *Bixby v. St. Louis Union Trust Co.*, 323 Mo. 1014, 22 S. W. (2d) 813.

When an act or agreement of parties disappoints the purpose of the settlor by divesting a property or income from the purposes named, such act or agreement is void *ab initio. Bixby v. St. Louis Union Trust Co., supra.*

"It is firmly established, both by English and American courts, that a trustee is bound to perform faithfully the duties relating to his trust, and that in doing so he cannot allow his own interests to interfere. If he unites his personal and representative capacities, he confuses transactions which the law requires him to keep separate and distinct. If he attempts to acquire an individual interest in the subject-matter of his trust or agency, he creates a temptation to serve himself at the expense of the beneficiary or principal, and enters a realm where his secret purposes with reference to trust property or interests may escape judicial scrutiny. To prevent evil consequences from growing out of the advantages which his position gives him, it will be presumed that what he does in relation to the interests or property involved in the trust or agency is done in a representative capacity." *Nebraska Power Co. v. Koenig,* 93 Neb. 68, 139 N. W. 839.

It is quite obvious that by virtue of the transaction entered into between Anna Marie Marshel and plaintiff, by and through the agency of Charles J. Warner, representing the plaintiff bank of which he was president and a stockholder, including the execution of the notes and mortgage in suit, the purposes expressed in the will of John Olson were disappointed, and the income provided by him for his daughter was divested from the purpose contemplated by the will, which purpose it was one of the duties of Charles J. Warner, as trustee, to carry out. Indeed, the result of

.the transaction was the enrichment of this trustee out of the trust represented by him, to the prejudice of the *cestui que trust*. This, equity will not permit.

The judgment of the district court is, therefore, correct in all respects, ·and it is

AFFIRMED.