FIRST NATIONAL BANK OF OMAHA, A CORPORATION, APPELLEE, V. FIRST CADCO CORPORATION, A CORPORATION, ET AL., APPELLEES, PATRICIA LUCAS, INTERVENER-APPELLANT.
205 N. W. 2d 115

Filed March 9, 1973. No. 38566.

Young, Kuhn, Person & Liakos, for intervener-appellant.

Swarr, May, Smith & Anderson and Dwight J. Moore, for appellee First Nat. Bank of Omaha.

Thomas D. Sutherland, Richard M. Duxbury, Harry B. Otis, L. J. Tierney, Keith Miller, and Richard D. Meyers, for appellees First Cadco Corp., et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an appeal by Patricia Lucas, a garnishee and intervener in a garnishment proceeding, from an order directing that certain stock certificates held by her and the corpus of a trust held by the Omaha National Bank as trustee, be delivered to the plaintiff First National Bank of Omaha as garnishor. We affirm the order of the trial court.

A brief résumé of the background will aid in understanding the issues. On January 2, 1970, the plaintiff obtained a judgment against Evelyn Lucas and others. The judgment was founded upon a promissory note executed on July 2, 1965. The judgment became final and the plaintiff took steps by garnishment to reach securities in the hands of Patricia Lucas alleged to belong to Evelyn Lucas, her mother-in-law. Patricia Lucas answered the interrogatories in garnishment, stating that she was in possession of the certificates belonging to Evelyn Lucas and that she held them as collateral for a loan.

The plaintiff also caused garnishment to be issued against the Omaha National Bank to reach the corpus of the trust of which Evelyn Lucas was the beneficiary. The trust corpus was approximately $14,000. Patricia Lucas intervened in that proceeding, alleging an interest in the corpus by reason of a prior assignment from Evelyn Lucas.

The garnishments and the issues made by the petition in intervention were tried together. Two issues are before the court on this appeal. The first is whether the finding of the trial court, that a certain promissory note of Evelyn Lucas payable to Patricia Lucas in the amount of $15,000 dated June 25, 1965, and due 60 months after date did not evidence a valid debt between the parties, is supported by the evidence. The note pledged the stock in question. The second is whether the related assignment of the trust corpus by Evelyn Lucas to Patricia Lucas, also dated June 25, 1965, and purportedly given to secure the same debt, was valid. The latter question involves a construction of the testimentary trust of which Evelyn Lucas was the beneficiary and it presents a question of law only. We will treat the last issue first.

The will bequeathed 200 shares of General Motors Corporation stock in trust to Omaha National Bank. The pertinent portions of the will are:

"To collect all the dividends from said stock after the close of my estate and the receipt of said stock by my trustee and after the payment of all expenses and personal taxes, to pay the net income to Evelyn Lucas, until she shall have reached the age of seventy (70) years, at which time my trustee shall assign and deliver said stock to her . . . .

". . . Neither the principal nor the income of the trust shall be liable for the debts of any beneficiary thereof, and no beneficiary hereunder shall have any power to sell, assign, transfer, encumber, or in any other manner to anticipate or dispose of his or her interest in the

trust fund or the income produced thereby, prior to the actual distribution thereof by the trustee to said bene-ficiary."

Evelyn Lucas became 70 years of age on September 12, 1970. However, no distribution of trust corpus was made at that time and no distribution had been made when the garnishment was served on the trustee on January 18, 1971. The garnishee contends the assignment, independent of any question of its contractual authenticity, by Evelyn Lucas to Patricia Lucas is invalid because it contravenes the spendthrift provisions of the trust which prohibits the beneficiary from anticipating the distribution "prior to the actual distribution thereof by the trustee to said beneficiary," and that the assignment is void ab initio. It cites Weller v. Noffsinger, 57 Neb. 455, 77 N. W. 1075; and Lancaster County Bank v. Marshel, 130 Neb. 141, 264 N. W. 470. Patricia Lucas, on the other hand, points to the language just quoted and argues that the garnishment is void because there had been no actual distribution of the trust proceeds, citing Erickson v. Erickson, 197 Minn. 71, 266 N. W. 161, 163; and concludes that since the assignment is prior in time it also becomes prior in right.

The spendthrift provisions of the trust are valid. Weller v. Noffsinger, *supra*. In Lancaster County Bank v. Marshel, *supra*, we held: "When an act or agreement of parties disappoints the purpose of the settlor by diverting a property or income from the purpose named, such act or agreement is void ab initio," citing Bixby v. St. Louis Union Trust Co., 323 Mo. 1014, 22 S. W. 2d 813. In the case at hand, the assignment was a clear violation of the restriction against alienation and comes within the ambit of our holding in Lancaster County Bank v. Marshel, *supra*, since it was executed prior to the time the beneficiary had any right to demand the trust corpus.

Even though the assignment was void we must deter-

mine whether the garnishment did reach the proceeds since the trust period had expired and the beneficiary had the right to demand the proceeds. Did the beneficiary's failure to demand distribution make the garnishment ineffective? We conclude it did not on the basis of our holding in Miles v. Miles, 120 Neb. 436, 233 N. W. 249, cited by the plaintiff, and II Scott on Trusts (3d Ed., 1967), §§ 153, 156, pp. 1116, 1192.

It is true the language of the instrument in Miles v. Miles, *supra,* is different from the language in the will we are here considering, since in Miles no conveyance was required to be made by the trustee and here the instrument does impose the duty to "assign and deliver." However, a construction which would allow the spendthrift protection to continue after the termination of the trust period and during the time when the beneficiary had the right to demand delivery would, in effect, allow her to establish a spendthrift trust for herself. It is uniformly held to be against public policy to permit a person to tie up his own property in such a way that he can still enjoy it but can prevent his creditors from reaching it. II Scott on Trusts (3d Ed., 1967), § 156, p. 1192. For analogous principle contained in the statutes of Nebraska, see section 36-201, R. R. S. 1943. We hold that the garnishment of the trustee was valid and effective.

We now turn to the question of the evidence supporting the trial court's finding that no valid debt existed between Evelyn Lucas and Patricia Lucas. Patricia Lucas answered the interrogatories in garnishment, acknowledging that she had in her possession certain stock certificates which were the property of Evelyn Lucas and asserting therein that she held the same as collateral for a loan. In the garnishment of the trustee she intervened alleging the lien by virtue of the assignment of the trust corpus. The note and the assignment were received in evidence and supported by the testimony of the two parties. They both testi-

fied that on June 25, 1965, Patricia Lucas made to Evelyn Lucas a loan of $15,000 in cash. Patricia Lucas testified she had the $15,000 in cash in her safe in her home and had taken it out and delivered it to Evelyn Lucas; and that Evelyn Lucas executed the note and assignments and delivered the pledged stock. Evelyn Lucas' testimony was to the same effect.

The only direct contradiction of this testimony is some of the contents of a financial statement signed by Evelyn Lucas bearing date of January 27, 1967, listing assets and obligations of herself and her husband. Evelyn Lucas acknowledged the execution of this statement on the date it bears. The statement described the stock held in the trust as well as that described in the answers of Patricia Lucas to the garnishment interrogatories and on which she claimed a lien of $15,000. The only liability listed in the statement was a real estate mortgage to an insurance company in the amount of $8,240, covering property included in the assets described in the statement and described as 4308 Grover Street. The statement did not describe the claimed $15,000 indebtedness to Patricia Lucas nor a claimed substantial equity which Patricia Lucas had in the 4308 Grover Street property by virtue of a claimed oral contract to purchase.

The evidence indicates that 4308 Grover Street was residential property which Patricia Lucas and her husband occupied, apparently since 1962 immediately following her graduation from college at age 22. Patricia Lucas testified that she entered into possession of this property, which had been acquired on October 16, 1962, by J. F. Lucas and Evelyn Lucas as joint tenants, pursuant to the provisions of an oral contract of purchase between her and J. F. Lucas. She stated that she paid down on the oral contract $6,000 in cash and paid the balance at the rate of $100 or more per month. These installments were paid in cash or by check. No checks were offered. Evelyn Lucas testified she knew nothing of this oral contract of purchase. Later, on June 4,

1969, Evelyn Lucas quitclaimed the property to J. F. Lucas, her husband. She stated that at this time she did not know of the oral contract of sale. On August 29, 1969, Evelyn Lucas and J. F. Lucas conveyed the property to Patricia Lucas as trustee for Robert F. Lucas, II. Patricia Lucas testified that at that time the property was fully paid for and that the mortgage had been paid by her father-in-law from the payments she had made. The total purchase price was testified to have been $19,200. Robert Frederick Lucas, II, is the son of Patricia Lucas and apparently is a young minor who, Patricia testified, has agreed to let his parents live in the property without payment of rent. The explanation given for taking title in this fashion was: "Because I intend for it to be for my son when he grows up; and it will be for the two boys now." There was no instrument setting forth the terms of the trust.

The financial statement, in addition to describing the items of property previously mentioned and other property, indicated the elder Lucases had an annual income of approximately $36,000 and a net worth of $237,543. The explanation for the claimed $15,000 loan from Patricia Lucas to Evelyn Lucas was that Evelyn Lucas was making a loan of that amount to her own daughter. There is no indication whether or not the daughter was available as a witness.

As we have already indicated, the question before us is whether, under the above state of the evidence, the findings of the trial court that there was no indebtedness are sufficiently supported or whether those findings must be set aside.

This court has held that in a garnishment proceeding an intervener who claims the garnisheed fund has the burden of proving his claim by a preponderance of the evidence. Brunke v. Gruben, 84 Neb. 806, 122 N. W. 37; Racek v. First Nat. Bank of North Bend, 62 Neb. 669, 87 N. W. 542. This appears also to be the majority rule in cases where a third party claims a possessory lien on

property taken under execution, although in some jurisdictions the execution creditor has the burden where the claimant or intervener is in possession at the time the execution is levied. 33 C. J. S., Executions, § 185, p. 405. Where the judgment debtor and the third party claimant or intervener are closely related, it appears salutary to place the burden of proof on the claimant or intervener even where the claimant is in possession when the garnishment or execution lien attaches. We accordingly hold that, at least where the parties are closely related, the burden of proving the interest or lien is upon the third party claimant in a garnishment proceeding even where the claimed lien is evidenced by possession.

The following principles also apply: Where a law action is tried to the court without a jury, the finding of the court has the effect of a jury verdict and will not be disturbed unless clearly wrong. Mathiesen v. Bloomfield, 184 Neb. 873, 173 N. W. 2d 29.

Evidence not directly contradicted is not necessarily binding on the triers of fact, and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. Teresi v. Filley, 146 Neb. 797, 21 N. W. 2d 699.

Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh undisputed parol testimony against facts and circumstances in evidence from which a conclusion may properly be drawn that the parol testimony is false. Teresi v. Filley, *supra*.

A substantial conflict may arise even though all the evidence is produced by one party. Teresi v. Filley, *supra*.

The credibility of witnesses and the weight to be given their testimony are for the triers of fact. Highway Equipment & Supply Co. v. Jones, 182 Neb. 234, 153 N. W. 2d 859.

The trial judge obviously did not believe the testi-

mony of the two witnesses as to the loan transaction. The determinations of credibility were for the trial judge and not for this court. On this general subject see "The Doubtful Omniscience of Appellate Courts," 41 Minn. L. Rev., p. 751, 758.

AFFIRMED.